IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Michelle Cross, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. 14 CV 50154 |
| v. | ) ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michelle Cross, brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is remanded.

### I. BACKGROUND[1]

On August 26, 2011, Plaintiff filed an application for supplemental security income and disability insurance benefits, alleging a disability beginning on July 8, 2011. R. 141, 147. Plaintiff asserted that she stopped working on December 31, 2010 because of her migraines, depression, shoulder problems and back pain. R. 167. On March 19, 2013, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 32-53. Plaintiff was represented at the hearing by the same

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.

1

attorney representing her in this appeal. Plaintiff and vocational expert Lee Knutson ("VE") testified at the hearing.

At the hearing, Plaintiff's counsel informed the ALJ that Plaintiff suffered from the following impairments: migraine headaches three or four times a month, depression and a right rotator cuff tear. R. 33. Plaintiff testified that she was 49 years old and graduated high school. R. 35. She was divorced in 2002 and had three children in their 20s. R. 35-36. Plaintiff lived in an apartment, paid for by a government housing subsidy, with her youngest daughter. R. 37-38. Plaintiff's daughter helped Plaintiff bathe, get out of bed and take medication. R. 37, 44, 192. She also cooked, cleaned and shopped for Plaintiff. R. 37, 193-94. Plaintiff did not have a driver's license, so her daughter usually drove her places. R. 45.

Plaintiff testified that she had back and shoulder pain. R. 40-41. She noted that she was waiting to see an orthopedic doctor about her back pain until she received insurance. R. 40. At the time of the hearing, Plaintiff was appealing the denial of her medical card. R. 40, 48. Plaintiff had surgery in 2005 or 2006 for her torn shoulder, but she was still in pain. R. 41-42.

Plaintiff also testified that she had migraines approximately four times per month and that they would last most of the day. R. 48. Sometimes, her migraines would cause her to get dizzy, have blurred vision and even black out. R. 49. Plaintiff testified that she took medicine for her migraines, but it did not help. R. 42. Plaintiff was prescribed Lyrica for her migraines, but was unable to fill the prescription because she did not have a medical card. R. 47.

The VE testified that based on Plaintiff's description of work history, she worked: (1) light, unskilled jobs in the past as a machine tender (DOT 699.686-010) and temporary packing line worker; (2) a light, skilled jobs as a group home worker; and (3) a sedentary, semiskilled job as a nail technician. R. 51. The ALJ then provided the VE with a hypothetical claimant with Plaintiff's age, education and work history who had a history of migraines 3 to 4 times per month and depression. R. 51-52. The VE testified that if the claimant had to miss work or was unfocused 3 or 4 days per month for her migraines, she would not be able to maintain any type of employment. R. 52.

On June 3, 2013, the ALJ issued her ruling that Plaintiff was not disabled. R. 11-24. The ALJ found that Plaintiff's chronic back and right shoulder pain were severe impairments. R. 13. The ALJ specifically found that Plaintiff's chronic headaches were not a severe impairment. R. 13-14. The ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria for any listing impairment. R. 16-17. The ALJ concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform unskilled, light work with no more than occasional reaching with the right upper extremity and could perform her past relevant work as a machine tender as well as with other jobs in the national economy. R. 17-24.

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a

3

rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Additionally, as the Seventh Circuit has repeatedly held, the federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical

4

bridge' from the evidence to her conclusion." (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))); *Jensen v. Colvin*, No. 10 CV 50312, 2013 U.S. Dist. LEXIS 135452, at *33-34 (N.D. Ill. Sept. 23, 2013).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded because the ALJ: (1) improperly found that her migraines were not severe; (2) failed to address the physician assistant's opinions regarding migraines; and (3) improperly determined her RFC.

**A. Migraines**

Plaintiff argues that the ALJ erred a step two of her analysis by finding Plaintiff's migraines were not severe and by ignoring Physician's Assistant Katherine Schenck's opinions regarding those migraines.

At step two of the disability determination, Plaintiff must show that her impairment or combination of impairments were severe enough to limit her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); SSR 96-3p. Additionally, Plaintiff must have suffered from the impairments or must expect to suffer from the impairments for at least 12 months. 20 C.F.R. § 404.1509; 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered not severe only if it is a slight abnormality that causes no more than a minimal effect on the claimant's ability to do basic work activities. *See* SSR 96-3p; SSR 85-28. Finding an impairment not severe "requires a careful evaluation of the medical findings that describe the impairment(s)… and an informed judgment about the limitations and

5

restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p; *see also* SSR 85-28.

Here, although the ALJ determined that Plaintiff's migraines were not severe, she found Plaintiff's chronic back and right shoulder pain to be severe impairments. R. 13. A favorable determination that any impairment is severe at this step would generally not require remand for further analysis. *See Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015) (explaining that an error at step two may be harmless if the ALJ considers all of the claimant's severe and non-severe impairments when determining the RFC). In this case, however, the ALJ's analysis at step two and the sequential steps is not support by substantial evidence as it relates to Plaintiff's migraines.[2]

At step two, the ALJ found that Plaintiff's chronic headaches, history of asthma, and obesity were not severe because they "either have improved within one year, are mild to moderate in nature, or are well controlled with medication." R. 13-14. The ALJ did not distinguish between the physical impairments when making this statement. Therefore, it is unclear precisely why the ALJ found the migraines non-severe. The Court might be able to infer from subsequent explanation that the ALJ found Plaintiff's migraines to have improved within the year because the ALJ

---

[2] The Court recognizes that step two denials are rare, as Plaintiff asserts. Plaintiff's Memorandum at 7, Dkt. #12 (citing *Caine v. Astrue*, 2010 U.S. Dist. LEXIS 117879, *30 (N.D. Ill. Nov. 3, 2010). But step two denials – and affirmances of those denials – are not unicorns. *See, e.g., Poremba v. Colvin*, 2014 U.S. Dist. LEXIS 73, *31-42 (N.D. Ill. Jan. 2, 2014). Indeed, the case Plaintiff cites affirmed the step two denial. *Caine*, 2010 U.S. Dist. LEXIS 117879, at *31-33.

6

explicitly stated that Plaintiff's asthma was mild in nature and was well controlled with medication.  R. 14.  Nevertheless, the Court should not have to piece together the ALJ's analysis to determine if it is supported by substantial evidence.

Even if the ALJ determined that Plaintiff's headaches had improved, she cites no evidence to support this determination.  In fact, Plaintiff testified in March 2013 that she had migraines four times per month and her medical records show that as recently as May 2012, she often complained of headaches.  R. 48, 506, 516-17, 572.

The only evaluation of the evidence relating to Plaintiff's migraines was in relation to Listing 11.03 for non-convulsive epilepsy.  R. 14, 252.  The ALJ found that the evidence did not show "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day," which was required under the listing. R.14; 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 11.03.  Additionally, the ALJ stated that the record contained "only sparse emergency room visits and there [were] no abnormal MRI or CT scans evidencing the existence of this condition or demonstrating that [Plaintiff] has even one episode per month."  R. 14.  This is the extent of the ALJ's analysis regarding Plaintiff's migraines at step two.  The ALJ did not consider Plaintiff's testimony or treatment notes relating to her migraines. The ALJ also failed to account for and evaluate this evidence at subsequent steps,

which if properly considered could affect the outcome of those determinations.[3] *See* R. 17-22 (limiting her analysis to Plaintiff's back and shoulder pain at steps three and four); *see also* 20 C.F.R. § 404.1545(a)(2) (providing that even non-severe impairments must be considered in determining a claimant's RFC). Without addressing the majority of this evidence, it is unclear whether the ALJ considered and discredited or just ignored this evidence when making her ruling.

In considering Plaintiff's magnetic resonance imaging ("MRI") and computerized tomography ("CT") scan, it is unclear whether the ALJ evaluated these tests in relation to evidencing seizures or migraines generally. In relation to migraines, Plaintiff's MRIs from 2011 were taken of her lumbar spine and shoulder and there was no indication they would reveal any relevant information relating to Plaintiff's migraines.[4] Plaintiff's CT scan of her brain in 2009 was taken in relation to her headaches, but the results were normal. Nevertheless, an MRI or CT scan is not required to prove Plaintiff had frequent migraines. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (explaining that an unremarkable MRI can be consistent with a migraine diagnosis); *Strickland v. Barnhart*, 107 Fed. Appx. 685, 689 (7th Cir. 2004) ("[N]othing in the record suggests that [neurological] tests can confirm either the existence of migraines or their likely severity.").

---

[3] For this reason, the Commissioner's reliance on a non-precedential Sixth Circuit decision to make a cursory argument that any error at step two is not reversible error is without merit. *See* Defendant's Memorandum at 3, Dkt. 17.
[4] The record also indicates that Plaintiff had an MRI taken in 2012 of her shoulder, but that record was not attached, and it appears that the ALJ did not request this missing information despite referencing it in her decision. R. 21, 510.

8

Even considering Plaintiff's normal CT scan from 2009 and "sparse emergency room visits," the ALJ did not address the fact that Plaintiff's financial situation limited her ability to seek treatment, testing and medication. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding that an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin."). The record reflects that Plaintiff had difficulty seeking medical care. *See* R. 47-48 (unable to fill prescriptions because she lacked insurance); R. 252 (attorney's brief stating that treatment was limited due to lack of a medical card); R. 404 (unable to get medications due to lack of insurance); R. 407 (medication no longer covered by insurance); R. 454 (able to fill medications with family's assistance); R. 509 (Plaintiff financially limited in receiving treatment and medications); R. 566 (lack of electricity due to unpaid bill); R. 573 (attempting to get health insurance); R. 578 (waiting for medical card to seek orthopedic treatment). Despite this evidence, the ALJ made no mention of Plaintiff's lack of insurance or financial situation in her decision. At the hearing, Plaintiff even confirmed that she was often unable to fill her prescriptions because of the lack of insurance. R. 47.

Moreover, the ALJ also failed to address Plaintiff's testimony and the numerous medical records, including from Plaintiff's treating neurologist,[5] in which Plaintiff complained of frequent migraines and even being let go from a job because of absences from excessive migraines. *See* R. 48-49, 223, 272, 282, 295, 298, 301,

---

[5] It was indicated in Plaintiff's previous disability determination that Dr. Monica Simionescu was her treating neurologist. *See* R. 63.

9

306, 312, 315, 327, 345, 371, 390-91, 401, 508, 516-17, 572, 576. Plaintiff also complained that her migraines were not well controlled by medication. R. 42, 295, 298. The majority of these treatment notes were from Physician's Assistant Schenck, who treated Plaintiff for her migraines from at least 2010 until 2012. R. 314-15. As Plaintiff points out, the ALJ only addressed Physician's Assistant Schenck's opinions as they related to Plaintiff's depression and back and shoulder pain. R.15, 21. While a physician's assistant is not an "acceptable medical source" under the regulations to render an opinion on the existence of a determinable medical impairment, Physician's Assistant Schenck would be considered an "other source" and can lend support regarding severity of the impairment and ability to function. *See* 20 C.F.R. § 404.1513(a), (d); SSR 06-03p (stating that the regulations require the ALJ to "consider all relevant evidence in the case record," including evidence from other sources, when making a determination about disability).

In light of Plaintiff's impairments, including her migraines, Physician's Assistant Schenck opined that Plaintiff may be absent from work 4 days a month and would need 2-3 unscheduled breaks a day. R. 508-09, 514, 518, 520. Without any mention of this evidence in the ALJ's decision, there is no way to know whether the ALJ considered this evidence and, if she did, how she analyzed it. *See Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) ("By failing to even acknowledge that evidence, the ALJ deprived us of any means to assess the validity of the reasoning process."). This is particularly important in light of the VE's testimony that missing

10

work or being unfocused 3 or 4 days per month for her migraines would preclude Plaintiff from maintaining any type of employment. R. 52.

For these reasons, the Court finds that substantial evidence does not support the ALJ's determination that Plaintiff's migraines were so minimal that they did not interfere with her ability to work. The Court is not making a determination as to the severity of Plaintiff's migraines or her ability to prove she had a disability. Nevertheless, remand is required when the ALJ fails to support her decision with substantial evidence, and this Court cannot affirm merely because Plaintiff's claim is weak. *See Tucker v. Colvin*, 2015 U.S. Dist. LEXIS 149905, at *10-11 (N.D. Ill. Nov. 4, 2015).

**B. RFC**

Plaintiff also argues that the ALJ improperly determined her RFC. A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing an RFC, the ALJ is required to consider all of the claimant's medically determinable impairments, both severe and non-severe, and all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(2)-(3).

The ALJ found that Plaintiff had the ability to perform unskilled, light work with no more than occasional overhead reaching with the right upper extremity. R. 17-22. In making this determination, the ALJ gave "great weight" to the state agency consulting physicians, who determined that Plaintiff could perform unskilled, light work with only occasional reaching overhead with her right arm. R. 21-22, 242, 479.

11

Despite Plaintiff's right arm restrictions, the ALJ found that Plaintiff could return to her past work as a machine tender (DOT 699.686-010) and was able to perform other unskilled, light jobs in the national economy, but provided no explanation for this determination. R. 22-24. The only indication that the ALJ determined Plaintiff could perform work as a machine tender was in the heading of her step four determination. R. 22. In the substance of the ALJ's finding, she only discussed Plaintiff's work as a temporary packing line worker and group home worker. R. 22-23. The ALJ made no mention of Plaintiff working as a machine tender, the requirements of that job or how Plaintiff could meet those requirements despite her arm limitation. *See* R. 22-24. Even in discussing Plaintiff's work as a temporary packing line worker and group home worker, the ALJ stated that Plaintiff made no mention of overhead reaching or only referenced minimal reaching generally. R. 22-23. However, the ALJ never asked the VE or Plaintiff what the specific overhead reaching requirements were for these jobs. The ALJ also failed to address the fact that the VE classified the group home worker position as skilled work, and the ALJ only found Plaintiff capable of performing unskilled work. R. 51.

The ALJ similarly failed to ask the VE about the characteristics of the machine tender job, and there is no evidence in the record indicating how much overhead reaching this job or other unskilled, light jobs require. The ALJ did not even mention Plaintiff's limitations regarding reaching overhead when questioning the VE. Accordingly, it is unclear how the ALJ determined that Plaintiff was still

12

capable of performing her job as a machine tender, or more generally other unskilled, light jobs in the national economy. *See Getch v. Astrue*, 539 F.3d 473, 481-82 (7th Cir. 2008) (finding reversible error where the ALJ failed to determine whether the claimant's medical condition prevented him from performing his past relevant work); *see also Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004) (finding that an ALJ may not conclude that a claimant can perform sedentary jobs generally without inquiring into the differences each sedentary job would require).

The ALJ's only explanation for her determination is a citation to SSR 85-15 and 96-9p. R. 23. The ALJ noted that although the regulations state some reaching is required in almost all jobs, Plaintiff's limitation to occasional overhead reaching with the right arm would not, in itself, "significantly impinge on any of the unskilled exertional occupational bases, since the DOT job descriptions indicate that performance of the large majority of such occupations requires little or no reaching above the shoulders." R. 23-24. The ALJ did not address specific jobs in the national economy that Plaintiff was capable of performing and did not question the VE about other occupations Plaintiff could perform with a reaching restriction. Thus, the ALJ has provided no justification for her assumption that Plaintiff could perform work as a machine tender or other unspecified unskilled, light work. It is possible that work as a machine tender or other jobs in the national economy exist that would accommodate Plaintiff's arm restriction, but the ALJ must build a logical bridge between the evidence and her conclusion. *See Getch*, 539 F.3d at 481-82. Therefore, remand is required for the ALJ to develop her analysis and

determine whether Plaintiff's impairments, both severe and non-severe, impacted her ability to perform the requirements of her past work or other specific jobs in the national economy.

## IV. CONCLUSION

For the reasons stated in this opinion, this Court finds that remand is warranted so that the ALJ may build a logical bridge between the evidence in the record and her ultimate conclusions. Accordingly, Plaintiff's motion for summary judgment (Dkt. 12) is granted, and the Commissioner's motion (Dkt. 17) is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: March 14, 2016   By: _____
Iain D. Johnston
United States Magistrate Judge